IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>   Plaintiff, )<br>)<br>vs. )<br>)<br>**LARRY MITHCELL HOPKINS**, )<br>**A.K.A. JOHNNY HORTON, JR.** )<br>)<br>   Defendant. ) | CRIMINAL NO.   19-CR-1211 JB |

## UNITED STATES' SENTENCING MEMORANDUM

The United States hereby submits this Sentencing Memorandum and as grounds therefore provides the following:

## CASE SUMMARY

In October 2017, the Federal Bureau of Investigation (FBI) received reports that the Defendant was the "commander" of a group that called itself the United Constitutional Patriots (UCP), was in possession of a cache of weapons and ammunition, and with others was training to assassinate certain politically-active individuals who supported groups opposed by the UCP. (Presentence Investigation Report [Doc. 49] at 4-5.)   As a result of these reports, on November 28, 2017, the FBI interviewed the Defendant at his residence in San Juan County, New Mexico. (Doc. 49 at 4.)   The FBI searched the Defendant's residence and seized nine firearms and a quantity of ammunition, all of which the Defendant admitted he was storing on behalf of other members of the UCP.   (Doc. 49 at 4.)   The Defendant previously had been convicted of a number of felonies, and knew so at the time he was in possession of the firearms and ammunition, including convictions in Michigan for possession of a loaded firearm; in Idaho for

possession of a firearm and criminal impersonation of a peace officer; and in South Dakota on federal charges for failure to pay child support.   (Doc. 49 at 6.)

In April 2019 it came to the FBI's attention that the Defendant was near the U.S.-Mexico border, where he, carrying an airsoft pistol, and other UCP members, some of whom were armed, were detaining immigrants crossing the border without government authorization.[1] (Doc. 49 at 6.)   On April 22, 2019, the Defendant was arrested in Sunland Park, New Mexico, and he was charged by indictment with violation of 18 U.S.C. § 922(g)(1), felon in possession of a firearm, for the firearms that were observed and seized by the FBI in 2017.   (Doc. 49 at 6; Indictment [Doc. 2] at 1.)   Specifically, the indictment alleged that on November 28, 2017, in San Juan County, the Defendant, knowing that he previously had been convicted of a felony, knowingly possessed, in and affecting commerce, various firearms and ammunition.   (Doc. 2 at 1.)

On January 10, 2020, the Defendant pled guilty to the Indictment pursuant to a plea agreement under which the United States agreed to recommend a sentence of imprisonment at the low end of the guidelines range.   (Doc. 47.)   The base offense level for the Defendant's offense is 14 under U.S.S.G. § 2K2.1.   A 4-level enhancement applies under U.S.S.G. § 2K2.1(b)(1), because the Defendant possessed between 8 and 24 firearms.   (Doc. 49 at 7.) The Defendant's criminal history places him in Criminal History Category (CHC) II.   (Doc. 49 at 13.)   With acceptance, the Defendant's total offense level is 15, which yields a guideline sentence of 21-27 months' imprisonment at Criminal History Category II.   Neither the Defendant nor the United States object to the PSR's factual findings or guidelines calculations.

---

[1] On March 3, 2020, federal jury convicted a member of a UCP-related group, James Christopher Benvie, of unlawfully impersonating a Border Patrol agent.   *United States v. Benvie*, 19-CR-1715 RB.

## ARGUMENT

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a)(2)(A)–(D).   To achieve these purposes, § 3553(a) directs sentencing courts to consider: (i) the Guidelines; (ii) the nature of the offense and the defendant's character; (iii) the available sentences; (iv) a policy favoring uniformity in sentences for defendants who commit similar crimes; and (v) the need to provide restitution to victims.   *See* 18 U.S.C. § 3553(a)(1), (3)–(7).

In *Gall v. United States*, 552 U.S. 38, 50-52 (2007), the Supreme Court explained how sentencing in the district court should proceed in meeting its statutory sentencing mandate. First, a district court must accurately calculate the applicable Guidelines range.   *Id.*   After considering the correct Guidelines range, the district court must then consider all of the 18 U.S.C. § 3553(a) factors to determine the appropriate sentence.   *Id.*   The district court "must make an individualized assessment based on the facts presented."   *Id.* at 50.   If the district court determines that a sentence outside the Guidelines is most appropriate, it "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the

3

degree of the variance."  *Id.*; *see also United States v. Nolf*, 30 F. Supp .3d 1200, 1222 (D.N.M. 2014)(Browning, J.)(describing three-step sequence in sentencing proceedings).

"Although the Guidelines ranges are no longer mandatory, both the Supreme Court and the United States Court of Appeals for the Tenth Circuit have clarified that, while the Guidelines are one of several factors enumerated in 18 U.S.C. § 3553(a), they are entitled to considerable deference."  *United States v. Tarango*, 2015 WL 10401775, at * 9 (D.N.M. Oct. 29, 2015) (Browning, J.) (*citing Rita v. United States*, 551 U.S. 338, 349 (2007)(Breyer, J.)("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate."); *United States v. Cage*, 451 F.3d 585, 593 (10th Cir. 2006)(Tymkovich, J.)(describing the Guidelines as "not just one factor among many"), *overruled on other grounds by Gall v. United States*, 552 U.S. 38 (2007)(Stevens, J.), as recognized in *United States v. White*, 265 F. App'x 719, 728 n.8 (10th Cir. 2008)(Anderson, J.)(unpublished)).   The Guidelines are significant, because they "are an expression of popular political will about sentencing that is entitled to due consideration ... [and] represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses."  *Id*. (*citing United States v. Cage*, 451 F.3d at 593 (internal quotation marks omitted)).

A. <u>Nature and Circumstances of the Offense</u>

The legislative history of 18 U.S.C. § 922(g) makes clear that the statute seeks "to keep guns out of the hands of those who have demonstrated that 'they may not be trusted to possess a firearm without becoming a threat to society.'"  *Scarborough v. United States*, 431 U.S. 563, 572 (1977)(quoting 114 Cong. Rec. 13869 (1968)).   A person convicted of a felony is just such

4

a person and is considered "presumptively dangerous" under 18 U.S.C. § 922(g).  *Lewis v. United States*, 445 U.S. 55, 63-64 (1980).

The Defendant in this case was a convicted felon, several times over, and thus fell within that class of persons who Congress deemed "presumptively dangerous" and "a threat to society." Even apart from this presumption of dangerousness, the Defendant engaged in rhetoric and activities that demonstrated the potential danger he poses to society.   Specifically, the Defendant together with approximately twenty (20) others formed an armed militia that included among its purposes enforcing laws as they saw fit, without authority, and possibly advocating for acts of violence against individuals who did not share their political beliefs.   (Doc. 49 at 4-5, 20.)   The Defendant claimed to be the "commander" of this militia, and he admitted to storing the militia's firearms in his residence.   (Doc. 49 at 5-6.)   Later, the Defendant and other militia members, clad in military-style uniforms and armed with powerful assault rifles, deployed to the U.S.-Mexican border, where they engaged in vigilante-tactics by detaining immigrants without any legal authority to do so.   (Doc. 49 at 6.).   It is dangerous for any person to assume the mantle of law enforcement without the actual training, certification, and authority.   This danger is only amplified when done by a convicted felon with access to numerous weapons.   A 21-month sentence appropriately reflects the nature and circumstances of the offense.

   B. <u>Defendant's History and Characteristics</u>

Defendant's history and characteristics also militate in favor of a 21-month sentence. Defendant has a long criminal history including over 20 arrests and approximately 14 convictions. (Doc. 49 at 8-15.)   Notably, Defendant's history demonstrates a lifelong pattern of defying authority, beginning with his going AWOL at age 18 and continuing with charges or convictions for obstructing law enforcement and escaping from custody multiple times. (*Id.*)

Defendant's history also reflects a pattern of impersonating others, including claiming to be Johnny Horton, Jr. (the same name he used as part of the UCP militia) or law enforcement. (Doc. 49 at 4, 10, 12.). These patterns of defying authority and assuming the role of law enforcement are particularly relevant here as they played a role in the circumstances leading to Defendant's arrest in the instance case.

While Defendant's criminal history militates in favor of a lengthier sentence, the United States observes that Defendant's personal history may support leniency, including Defendant's age, failing health, history of abuse, and the tragic loss of his wife and daughters. (Doc. 49 at 16-19; Doc. 51.) On balance, the United States submits that Defendant's history and characteristics support a sentence of 21 months.

C. <u>Reflecting the seriousness of the offense, Promoting Respect for the Law and Affording Adequate Deterrence</u>.

A 21-month sentence is necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and deter this Defendant and other convicted felons from illegally stockpiling firearms and attempting to enforce the laws as they choose, without authority or oversight. A sentence that includes a significant variance may embolden others to flout the law in favor of their own concept of justice, which conduct undermines the entire criminal justice system. Finally, a 21-month sentence is warranted to ensure equal sentencing under like circumstances, as well as to protect the public from further crimes of the Defendant. For all these reasons, the United States submits that a 21-month sentence is "sufficient, but not greater than necessary" to comply with the statutorily defined purposes enumerated in 18 U.S.C. § 3553.

## **CONCLUSION**

Based on the foregoing, the United States recommends that the Court sentence the

Defendant to a 21-month term of imprisonment.

            Respectfully submitted,

            JOHN C. ANDERSON
            United States Attorney

            */s/ Electronically filed*
            HOLLAND S. KASTRIN
            Assistant U.S. Attorney
            P.O. Box 607
            Albuquerque, New Mexico 87103
            (505) 346-7274

I HEREBY CERTIFY that on the 13th day of April 2020, I filed the foregoing pleading electronically through the CM/ECF system, which caused counsel of record for defendant to be served by electronic means.

*/s/ Filed Electronically*
HOLLAND S. KASTRIN
Assistant U.S. Attorney